UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. 7:19-cr-00004-MFU |
| ) | |
| JAMES M. HALE ) | |
| ) | |
| Defendant ) | |

## MOTION TO SUPPRESS EVIDENCE

COMES NOW the defendant, James M. Hale, by counsel, and moves for an order to suppress the following evidence:

> Any and all items of physical evidence allegedly seized from Mr. Hale including, but not limited to, a Smith & Wesson 40 Caliber pistol, Serial No. RBT7949, which was unlawfully confiscated by Det. R. A. Bridges of the Roanoke City Police Department on November 30, 2018.

## STATEMENT OF FACTS

In support of this motion, and upon information and belief, counsel states as follows:

1. On the afternoon of November 30, 2018, Det. R. A. Bridges and other members of the Roanoke Regional Drug Unit were sitting in the Courtland Road/Liberty Road area conducting surveillance when Det. Bridges observed an individual, (hereinafter referred to as "Jane Doe") known to him to be a heroin user, pull into the Food Way Mart parking lot on Liberty Road, N.W. Shortly after said individual pulled into the parking lot, a black BMW also pulled into the parking lot, but did not park in a parking spot. Jane Doe exited her vehicle and walked toward the BMW. Tyrek Kelly, the co-defendant in this case, was then observed exiting the driver's seat and following Jane Doe back to her vehicle,

where she got into the passenger seat. Kelly was then observed giving something to Jane Doe through the passenger window. At that time, Det. Bridges could not identify what, if anything, had been transferred from Kelly to Jane Doe.

2. Kelly then reentered the driver's side of the BMW and headed west on Liberty Road, where he was followed by Special Agent Southern. At the intersection of Blaney Avenue and Dunbar Street in Northwest Roanoke, Kelly pulled over to the curb, exited the BMW, and approached the passenger side of a white GMC SUV, which was stopped in the middle of the road. Special Agent Southern observed Kelly drop something into the window of the passenger side of the vehicle. Kelly then got back into the BMW and pulled off, making a right hand turn onto Whitten Avenue. The BMW was then stopped by Officer Maddy of the Roanoke City Police Department in the 700 block of Hunt Avenue, N.W.

3. At the time Officer Maddy initiated the stop, no traffic infraction had been committed by Mr. Kelly as the driver of the BMW. Instead, the stop was based entirely and exclusively upon Kelly's interactions with the occupants of the two vehicles, characterized by Det. Bridges as "hand to hand transactions", although none of the officers could clearly perceive what, if anything, had been passed through the windows.

4. After Officer Maddy initiated the stop, Det. Bridges recovered a Smith & Wesson, 40 caliber pistol from Mr. Hale's right jacket pocket.

**OFFICER MADDY AND DET. BRIDGES VIOLATED MR. HALE'S FOURTH AMENDMENT RIGHTS BY CONDUCTING A *TERRY* STOP OF MR. HALE WITHOUT REASONABLE ARTICULABLE SUSPICION THAT HE HAD BEEN INVOLVED IN CRIMINAL ACTIVITY**

A. **Officer Maddy seized Mr. Hale when he initiated a traffic stop**.

The Fourth Amendment of the United States Constitution prohibits unreasonable seizures. A seizure occurs when, taking into account all of the circumstances surrounding the incident, a reasonable person would not have believed he was free to leave. *U.S. v. Mendenhall*, 446 US 544, 554 (1980). "An officer who orders a particular car to pull over acts with an implicit claim of right based on fault of some sort, and a sensible person would not expect the officer to allow people to come and go freely from the physical focal point of an investigation into faulty behavior or wrongdoing. If the likely wrongdoing is not the driving, the passenger will reasonably feel subject to suspicion owing to close association; […] It is also reasonable for passengers to expect that an officer at the scene of a crime will not let people move around in ways that could jeopardize his safety. *Brendlin v. California*, 551 U.S. 250, 127 S.C.t 2400 (2007). Mr. Hale as a passenger in a vehicle stopped by a Roanoke City police officer was seized when Officer Maddy exited his vehicle to speak with Kelly and Hale. Taking into account the circumstances of this case, it is clear that a reasonable person could not have felt at liberty to ignore Officer Maddy and Det. Bridges, and to simply leave the scene of the stop on foot.

B. **Officer Maddy and Det. Bridges had no reasonable articulable suspicion to justify the brief investigative stop.**

From its inception, the seizure of Mr. Hale was a *Terry* stop without a reasonable articulable suspicion that criminal activity was afoot as required to justify this type of brief investigative stop under *Terry v. Ohio*, 392 U.S. 122 (1968), *Alabama v. White,* 496 U.S. 325, 330 (1990). A seizure violates the Fourth Amendment for purposes of an investigative stop if, based on the totality of the circumstances, the detaining officer does not have a "particularized and objective basis for suspecting the particular person stopped of criminal

3

activity." *U. S. v. Cortez*, 449 U.S. 441, 417-18 (1981).

Before Officer Maddy and Det. Bridges seized Hale, they had witnessed, during daylight hours, a black male, driving a BMW, get out of his car twice to interact with occupants of other vehicles. During these interactions, the law enforcement officers surveying the scene believed that they may have witnessed a hand to hand transaction of some kind, although they could not have said, at that time, what Kelly had passed on, if anything. For all they knew, Kelly was delivering Mary Kay products. However, for reasons which are not articulated in the discoverable evidence, and which counsel can only speculate about, Kelly was suspected of being engaged in the criminal distribution of illegal narcotics. Of the hundreds of plausible explanations as to what Kelly was doing, the vast majority of which would be perfectly legal, the law enforcement officers involved in this case landed upon the one that would justify a seizure of Kelly and Hale. Based on the very limited activity witnessed by Officers Maddy, Special Agent Southern, and Det. Bridges, it was unreasonable of them to suspect Kelly of distribution of illegal narcotics. Because they relied upon this unreasonable suspicion in initiating the stop of the BMW, in which Hale was traveling as a passenger, the seizure of Hale, pursuant to said stop, violated his Fourth Amendment constitutional rights.

### **ALL EVIDENCE OBTAINED FROM MR. HALE'S UNLAWFUL DETENTION IS THE FRUIT OF AN UNCONSTITUTIONAL STOP AND MUST BE SUPPRESSED**

Where illegality is established for a stop, by, for instance, violating the Fourth Amendment, all evidence seized from that stop by exploitation of that illegality is 'fruit of the poisonous tree, unless the evidence was obtained by […] means sufficiently distinguishable to be purged of the primary taint.' *Wong Sun v. United States,* 371 U. S.

488 (1963). Here, Officer Maddy and Det. Bridges, did not have a reasonable articulable suspicion that a crime had been committed. Without such basis, there was no legal foundation to seize Mr. Hale. Because the only means by which Det. Bridges obtained the pistol from Mr. Hale was through the illegality of the stop, the evidence seized was obtained in violation of the Fourth Amendment and must be suppressed as the 'fruit of the poisonous tree'.

>Respectfully submitted,

>JAMES M. HALE

>By: /s/ Correy A. Diviney

Correy A. Diviney, Esq. (VSB#74833)
STRICKLAND, DIVINEY, SEGURA & BYRD
P.O. Box 2866
23 Franklin Road, SW
Roanoke, VA 24001-2866
Telephone: (540) 982-7787
Fax: (540) 320-8927
correy@stricklandattorneys.com

CERTIFICATE OF FILING

I hereby certify that on July 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will electronically notify all parties of record.

>/s/ Correy A. Diviney