IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 7:19-cr-00004-MFU |
| | ) | |
| JAMES M. HALE | ) | |

## RESPONSE OPPOSING MOTION TO SUPPRESS

COMES NOW the United States of America, by counsel, and says as follows in opposition to defendant's Motion to Suppress:

## STATEMENT OF FACTS

On November 30th, 2018, Roanoke City Detective Bridges observed a woman he knew to be a heroin user drive onto the parking lot of the Foodway Mart on Liberty Road NW, in the City of Roanoke. This location is known by the police to be a high crime and drug area. Shortly thereafter, a black BMW pulled onto the lot. The woman got out of her car, and started to walk over to the BMW, but a man (later identified as Tyrek Kelly) exited the driver's side of the BMW, met the woman in the parking lot, and walked back with her to her vehicle. Detective Bridges then observed what he believed to be a hand-to-hand drug transaction between the two.

After the woman drove away, the BMW also left the parking lot. A GMC vehicle, which had been parked across the street, then pulled out and followed the BMW west on Liberty Road NW. The two vehicles traveled a short distance, after which Bridges saw the BMW pull over to the curb. At that point, the GMC pulled up beside and to the left of the BMW. Kelly, the driver of the BMW, got out of his car and approached the passenger side window of the GMC. Virginia State Police Special Agent Southern was in an unmarked vehicle directly behind the GMC, and saw Kelly drop something through the passenger side window of the GMC, then get back into the

1

driver's seat of the BMW, and pull off. Detective Bridges also observed two vehicles stopped together, but was too far away to see any exchange.

When the BMW and GMC parted ways, detectives followed the GMC to a nearby gas station where the driver was in the process of purchasing gas. Detectives Flippin and Knicely approached the GMC and found the driver to be a woman named April Nichols. Her passenger was a man named Joe Bennett Smith, III. When questioned about whether she had just purchased drugs, Nichols handed the detectives a baggie containing a gram of heroin, and admitted that she had just obtained it from a friend of Smith's who was driving a black BMW. Smith confirmed that he had arranged the meeting and heroin transaction with someone he knew as "Brooklyn" and showed the detectives text messages on his phone arranging the meeting.

While the stop of the GMC and the interview of its passengers was ongoing, Detective Bridges notified Officer Maddy, who was driving a marked police car, that the black BMW had been involved in drug transactions, and asked Officer Maddy to stop it for further investigation. Officer Maddy did so, and at the start of the stop, approached the driver's window of the BMW. When the driver, Tyrek Kelly, rolled down his window, Officer Maddy immediately observed the strong odor of marijuana coming from the BMW. Officer Maddy also observed that Kelly had a marijuana cigarette tucked behind his ear. Officer Maddy asked Kelly to step out of the car, and eventually discovered that Kelly had a pistol concealed on his person.

Shortly after Officer Maddy stopped the BMW, Detective Bridges arrived at the location of the stop, and approached the passenger side of the BMW. Defendant Hale was seated in the passenger seat of the car. Detective Bridges asked Hale to roll down his window, and Detective Bridges then also immediately smelled a strong odor of marijuana coming from the car. Bridges asked Hale if he had any illegal weapons in the car such as knives or guns. Hale said he did not

have any knives. When Bridges asked if Hale had any guns, Hale began reaching toward the front of his waistband. Bridges told him not to reach for anything and to raise his hands in the air. Bridges then asked where the gun was, and Hale looked down. Based on this, Bridges lifted up Hale's jacket to see his front waistband area. Bridges immediately realized that there was something heavy in Hale's right jacket pocket, reached into that jacket pocket, and removed a Smith &Wesson .40 caliber pistol. Hale was a convicted felon at the time of this encounter.

## **ARGUMENT**

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion means something more than inchoate and unparticularized suspicion or hunch" but less than probable cause. *Id*. To meet this burden, the officer must be able to point to "specific and articulable facts which, taken together with rational inference from those facts, establish reasonable suspicion of criminal activity." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In determining whether officers have reasonable suspicion to conduct a stop, courts look to the totality of the circumstances surrounding the stop. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Courts consider factors including (1) presence in a high crime area, *United States v. Johnson,* 599 F.3d 339, 345 (4th Cir. 2010); *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993); and (2) law enforcement's observation of what appears to be, based on their experience, criminal activity or a drug transaction, *Terry* at 22-23; *Lender*, 985 F.2d at 154.

Here, Detective Bridges observed that the driver of the black BMW was involved in what appeared to be a hand to hand drug transaction with someone that Bridges knew to be a heroin user. S/A Southern then observed what appeared to be another transaction between the driver of the BMW and someone in the GMC. Much of this activity occurred in what the officers knew to

3

be a high crime and high drug area. These observed drug transactions gave detectives a reasonable and articulable suspicion that the BMW, and its occupants, were involved in criminal activity. This was confirmed shortly thereafter by the information, and heroin, gathered from the stop of the GMC. Based on this reasonable and articulable suspicion, police were permitted to stop the BMW to investigate further.

As soon as Officer Maddy approached the stopped vehicle, and had the driver roll down his window, he immediately noticed an odor of marijuana coming from inside the car. The Fourth Circuit has held that when "[an officer] smell[s] the odor of marijuana emanating from the vehicle . . . the officers posses[s] probable cause to search the vehicle. . . ." *United States v. Lewis*, 606 F.3d 193, 197-98 (4th Cir. 2010); *United States v. White*, 836 F.3d 437, 441-42 (4th Cir. 2016); *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004). His subsequent observation that the driver had a marijuana cigarette behind his ear was further corroboration. Thus, even without anything more, and without reference to the information gained from the stop of the GMC, Officer Maddy, and by extension the other officers involved in the investigation, had probable cause to search the BMW. Arguably, the eventual discovery by Officer Maddy of the firearm on Kelly's person would also have supported a concern on the part of the police that other weapons might be located within the BMW.

Hale was a passenger in the vehicle when it was stopped. "(A)n officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). Moreover, "when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may . . . order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others." *United*

*States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998). *See also United States v. Rooks*, 596 F.3d 204, 210-11 (4th Cir. 2010).

Here, police had at least three distinct reasons to reasonably suspect that illegal drugs might be in the BMW. First, detectives had witnessed the driver of the BMW conducting hand-to-hand drug transactions from the BMW. Second, Officer Maddy, on approaching the driver, immediately noticed the odor of marijuana coming from the BMW, leading to the inference that marijuana might be found within the vehicle. Detective Bridges also independently noticed the odor of marijuana coming from the vehicle when he approached it. Finally, Officer Maddy noticed that the driver, seated in the driver's seat, had a marijuana cigarette behind his ear. Marijuana remains illegal, and the marijuana cigarette was observably within the vehicle. For all of these reasons, corroborated by information that arose from the stop of the GMC, Detective Bridges had adequate justification to order Hale from the car and pat him down for weapons, at which time the firearm would inevitably have been discovered. Whether the pistol was inevitably discovered in the course of such an authorized pat-down, or found based on Hale's actions while Hale was still seated in the car, prior to getting out, is of no legal moment.

## **CONCLUSION**

This court should deny defense's motion to suppress because: (1) the police had reasonable suspicion to stop the BMW for further investigation, based on their observations of it being involved in drug trafficking, quickly corroborated by the results of the stop of the GMC; (2) police had probable cause to search the vehicle once it was stopped, based on the observed odor and presence of marijuana within it; and (3) because police had reasonable suspicion that there were drugs in the car, officers were justified in searching Hale's person, which must inevitably have led

to the discovery of the firearm that he was carrying. For these reasons this Court should deny defendant's Motion to Suppress.

                                      THOMAS T. CULLEN

                                      United States Attorney

                                      */s/ R. Andrew Bassford*
                                      R. Andrew Bassford
                                      Assistant United States Attorney
                                      Virginia State Bar No. 42584
                                      Western District of Virginia
                                      P. O. Box 1709
                                      Roanoke, VA 24008-1709
                                      Tel: (540) 857-2250
                                      Fax: (540) 857-2179
                                      Email: Andrew.Bassford@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2019, I caused a true copy of the foregoing Response Opposing Motion to Suppress to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to the following:

    Correy A. Diviney, Esq.
    Strickland, Diviney, Segrua & Byrd
    P.O. Box 2866
    23 Franklin Road, S.W.
    Roanoke, Virginia 24001-2866

                                        */s/ R. Andrew Bassford*
                                      R. Andrew Bassford
                                      Assistant United States Attorney