```
1                IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF VIRGINIA
2                         ROANOKE DIVISION

3
     ****************************************************************
4    UNITED STATES OF AMERICA,

5            Plaintiff,            CASE NO.: 7:19-CR-00004
                                             Defendant 2
6                                  July 10, 2020
                                   Roanoke, Virginia
7                                  Sentencing Hearing
     -v-
8
     JAMES M. HALE,                Before:
9                                  HONORABLE MICHAEL F. URBANSKI
                                   CHIEF UNITED STATES DISTRICT JUDGE
10           Defendant.           WESTERN DISTRICT OF VIRGINIA

11   ****************************************************************
12   APPEARANCES:

13   For the Plaintiff:

14        RONALD ANDREW BASSFORD
          United States Attorneys Office
15        310 First Street, S.W. Room 906
          Roanoke, VA 24008
16        540-857-2935
          andrew.bassford@usdoj.gov
17   For the Defendant:

18        CORREY AUSTIN DIVINEY
          ARTHUR P STRICKLAND, P.C
19        PO Box 2866
          Roanoke, VA 24001-2866
20        540-982-7787
          correy@stricklandattorneys.com
21
     _____
22                 Mary J. Butenschoen, RPR, CRR
                   210 Franklin Road, S.W., Room 540
23                    Roanoke, Virginia  24011
                       540-857-5100, Ext. 5312
24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT
25   PRODUCED BY COMPUTER.
```

INDEX

**WITNESS NAME**                                                    **PAGE**

For the Defendant:

**LAQUONDA SAUNDERS**

   Direct Examination By Mr. Diviney......................... 10

*///*

1    (Proceedings commenced 11:05 a.m.)

2              THE COURT:  All right.  Good morning.  Please call

3    the case.

4              THE CLERK:  All right.  This is the *United States of*

5    *America v. James M. Hale*, Criminal Action Number 7:19-CR-4,

6    Defendant 2.

7              THE COURT:  Okay.  Mr. Bassford and Mr. Diviney,

8    good morning.  What we're going to do for at least during this

9    phase of the reopening from the Coronavirus is we're going

10   to -- I will have counsel to act as if this is a state court

11   matter and just remain seated at counsel table and speak into

12   the microphones there so that the court reporter can hear you.

13   That way it keeps folks from sharing a podium.  And so I'll be

14   happy to hear from you, Mr. Bassford, and you, Mr. Diviney,

15   from counsel table.  You may remain seated as well and then

16   I'll hear from Mr. Hale as well.

17             Okay.  This case has been set down today for

18   sentencing.  Is the United States ready to proceed?

19             MR. BASSFORD:  Yes, Your Honor.

20             THE COURT:  And Mr. Diviney, is Mr. Hale ready to

21   proceed?

22             MR. DIVINEY:  He is, Your Honor.

23             THE COURT:  Okay.  Let's recap where we are in this

24   case.  Mr. Hale was charged in an indictment with Tyrek Kelly.

25   Mr. Kelly was charged in the first three counts and Mr. Hale

1    was charged in Count Four.  And Count Four was a 922(g)

2    violation, and that is possession of a firearm by a prohibited

3    person.  There was -- there was some pretrial matters that

4    took place in this case, and we are proceeding in this guilty

5    plea I believe without a plea agreement; is that right?

6            MR. DIVINEY:  That's right, Your Honor.

7            THE COURT:  I thought that because there was a

8    motion to suppress that the Court denied, and so that motion

9    to suppress remains something that the defendant, if he wants

10   to, can take up on appeal, okay.

11           We did a -- right before the trial in this case, the

12   scheduled trial in this case, we did a guilty plea hearing at

13   which Mr. Hale plead guilty to being a felon in possession.

14   That took place on -- no, I'm sorry.  I was thinking of a

15   different case.

16           Mr. Hale appeared before the Court and plead guilty

17   on December the 27th, 2019, and without a plea agreement.  I

18   ordered a presentence report.  I accepted his plea at that

19   time, though, when I looked at the minute sheet.  So it's

20   purely a question today of sentencing.

21           The Court has read the sentencing memos.  I

22   appreciate them.  The Court has read the presentence report.

23   I also got a letter from Mr. Hale that I read, and I got two

24   other notes that were just recently docketed from Laquonda

25   Saunders and from Laericka Thomas, and I read those as well.

1              I take it -- let me start out this way.  Mr. Hale,

2     do you remain fully satisfied with the advice and

3     representation provided by your lawyer, Mr. Diviney, in this

4     case?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Okay, good.  This case is a case that

7     bears the penalty of from zero to ten years incarceration, a

8     period of supervised release of not more than three years, a

9     maximum fine of up to $250,000, and a $100 mandatory special

10    assessment.

11             I have reviewed the presentence report.  Has each

12    side had an opportunity to review the presentence report and

13    consider whether any objections need to be made, Mr. Bassford?

14             MR. BASSFORD:  Yes, Your Honor.

15             THE COURT:  And Mr. Diviney?

16             MR. DIVINEY:  We have, Your Honor.

17             THE COURT:  You've gone over that with Mr. Hale?

18             MR. DIVINEY:  I have, Your Honor.

19             THE COURT:  Okay.  All right.  There -- I did not

20    note any objections that were made to the presentence report.

21    Are there any additional objections that you-all would like to

22    raise at this time?

23             MR. BASSFORD:  No, Your Honor.

24             THE COURT:  Mr. Diviney?

25             MR. DIVINEY:  No, sir.

1          THE COURT:  Okay.  Let me go ahead and make -- I'm

2     going to accept the presentence report as written, and let me

3     go ahead and make guidelines findings, please.

4          This is an offense under 2K2.1 of the guidelines,

5     and that bears a base offense level of a 24.  There are no

6     enhancements or reductions, and the defendant is credited with

7     three points for acceptance of responsibility.

8          I assume, Mr. Bassford, the government is moving for

9     all three points?

10          MR. BASSFORD:  Yes, Your Honor.

11          THE COURT:  Okay.  Leaves him with a total offense

12     level of a 21.

13          Then we get to the part about Mr. Hale's case that

14     is the most troubling, and that is his prior criminal history.

15     I studied Mr. Hale's prior criminal history.  It starts at age

16     19 when he was convicted of criminal conspiracy to engage in

17     robbery in York, Pennsylvania.  He got three criminal history

18     points for that conviction.  And he actually received jail

19     time for that -- that charge in Pennsylvania.

20          In 2009 after he got out he was convicted of

21     possession with the intent to deliver marijuana and false

22     identification to law enforcement authorities, also in York,

23     Pennsylvania.  He received a custodial sentence.  And also

24     three criminal history points for that.

25          In 2012 he was convicted of an offense of burglary

1    and obstruction of justice also in York, Pennsylvania, and

2    received a custodial sentence.  Also three criminal history

3    points for that conviction.

4           Paragraph 35 of the presentence report refers to

5    another conviction, this time in 2017, for possession with the

6    intent to deliver cocaine.  The defendant received a custodial

7    sentence.  Also received probation.  And according to the

8    presentence report, there is a -- an active warrant out of

9    Pennsylvania for a probation violation.

10          Ms. Burns, does that remain correct?

11          PROBATION:  Your Honor, I tried to contact the

12   authorities there to confirm that, and as far as they know it

13   is still active at this time.

14          THE COURT:  Okay.  All right.  So do we know how

15   that's going to work with his -- I mean, will he go serve his

16   federal sentence and then have to go deal with the state

17   warrant?  Do you know how that's going to work?

18          PROBATION:  That's typically how it works.

19          THE COURT:  Yeah, he wasn't -- he was arrested on

20   Virginia state charges, and those are picked up federally.  So

21   those will be served first and that warrant on the probation I

22   think will serve as a detainer.

23          Does anybody else -- do counsel have a different

24   understanding?

25          MR. BASSFORD:  No, Your Honor.  I think that's

1  correct.

2          MR. DIVINEY:  That's my understanding, Judge.

3          THE COURT:  All right.  In 2016 he picks up his

4  first offense in Roanoke, and that was providing false

5  identification to a law enforcement officer.  That was in

6  General District Court in the City.  And he gets one criminal

7  history point for that.

8          He does have some other convictions, driving

9  suspended in Fincastle and a couple of convictions in West

10 Virginia, but those have no criminal history points.

11         When you total up all those criminal history points,

12 that is a criminal history score of 13, but he was -- he

13 was -- he gets two points because he was under a criminal

14 justice sentence from the cocaine conviction in York,

15 Pennsylvania.  Puts him at a criminal history -- criminal

16 history category -- score of 15, and it doesn't matter because

17 13 or more puts him in criminal history category VI.  So we

18 have -- he is at the highest criminal history category.  And

19 as Mr. Bassford notes in his sentencing memo, these aren't

20 just an accumulation of minor offenses.  These are offenses

21 that involve violence.  These are offenses that involve drug

22 dealing.  So this is serious -- this is serious criminal

23 history that he comes into this court for.

24         And because of that criminal history with an offense

25 level of 21 and a criminal history category VI makes his

1    guidelines 77 to 96 months.

2              Now, let's see, I've read the -- any objection to

3    the Court's guidelines calculations in this case?

4              MR. BASSFORD:  No, Your Honor.

5              MR. DIVINEY:  No, sir.

6              THE COURT:  Okay.  I have -- I've read the

7    sentencing memos in this case, and the government is asking

8    for low end of the guidelines at 77 months.  And Mr. Diviney

9    is asking for a variance down below the guidelines to 48

10   months.  And so I'm happy to hear any evidence you want to put

11   on or I'm happy to hear any -- any argument.

12             Do you have any evidence, Mr. Bassford?

13             MR. BASSFORD:  No, Your Honor.

14             THE COURT:  And Mr. Diviney?

15             MR. DIVINEY:  Judge, I have one witness,

16   Ms. Laquonda Saunders, who wrote a letter and would like to be

17   heard as well, Judge.

18             THE COURT:  All right.  Have her come up.  We're

19   going to have her sit right in the middle of the jury box

20   right there and be sworn.  Just right in front of that speaker

21   bar there.

22             THE CLERK:  Ma'am, will you raise your right hand,

23   please.

24        LAQUONDA SAUNDERS, CALLED BY DEFENDANT, SWORN

25             THE COURT:  All right.  Go ahead, Mr. Diviney.

1                        DIRECT EXAMINATION

2    BY MR. DIVINEY:

3    Q    Ma'am, would you state your name for the Court, please?

4    A    Laquonda Saunders.

5    Q    Would you spell your first name?

6    A    It's spelled L-A-Q-U-O-N-D-A.

7    Q    Thank you.  How do you know Mr. Hale?

8    A    I'm in a relationship with him.

9    Q    All right.  And how long has that relationship lasted to

10   date?

11   A    About three years.

12   Q    Okay.  And did you-all meet here in Roanoke?

13   A    Yes, sir.

14   Q    Is this where you're from?

15   A    Yes.

16   Q    You've lived here your whole life?

17   A    Yes, born and raised.

18   Q    Okay.  How did you meet?

19   A    Through a friend.

20   Q    Okay.  And you-all have a baby girl together who is in

21   the courtroom; is that right?

22   A    Yes, sir.

23            THE COURT:  And she's being very good.  I will note,

24   she's being -- she's a year old -- a year old, right?

25            THE WITNESS:  Yes.

1      THE COURT:  And she's being very good, so that's
2 excellent.
3      THE WITNESS:  Thank you.
4 BY MR. DIVINEY:
5 Q    Why don't you tell the Court a little bit about Mr. Hale
6 or the Mr. Hale that you know.
7 A    Well, the Mr. Hale that I know is a very kind person.
8 He's a giving person, a caretaker.  He'll give his life if he
9 had it.  He has a very, very good heart.
10 Q    There was some mention made in your letter about his
11 relationship to his grandfather.  Do you know his
12 grandfather?
13 A    Yeah, Mr. Pumpkin.
14 Q    What's his name?
15 A    We call him Mr. Pumpkin.
16 Q    Mr. Pumpkin.
17 A    Uh-huh.
18 Q    That's not his name.
19 A    No, that's just his nickname everybody calls him.
20 Q    He lives in the neighborhood.
21 A    Yes.
22 Q    And you've known his grandfather for a long time?
23 A    Yes, I've known him for a long time.  Before I met him.
24 Q    Do you have any guess as to how old his grandfather is?
25 A    About 80.  Almost 80, if not.

1  Q    And what is Mr. Hale's relationship with his

2  grandfather?

3  A    They are very close.  He's like his caretaker, I'll say.

4  He used to be there for him all the time.  Every day he will

5  check on him, make sure he has everything he needs as far --

6  Q    Have you been over there with him?

7  A    Yes, I have.

8  Q    And what kind of stuff does he do for his grandfather?

9  A    He'll help him with everyday living as far as bathing

10 him, getting him ready for the day, store runs --

11 Q    Have you helped him bathe his grandfather?

12 A    Yes.

13 Q    All right.  What do you do for a living?

14 A    Who, Mr. Pumpkin?

15 Q    What do you do for a living?

16 A    What do I do?  I am a CNA.

17 Q    So you know something about that.

18 A    Yes.  I take care of old people for a living.

19 Q    Have you helped Mr. Hale learn how to do that?

20 A    Yes.

21 Q    I'm assuming you're asking the Court to show some

22 leniency so that Mr. Hale can play a more active personal role

23 in his daughter's life; is that right?

24 A    Yes, I am, yes, sir.

25 Q    Has he ever held his baby?

1    A    No, he has not.  I was pregnant when he got in.

2    Q    Do you have anything else you'd like to tell the Court?

3    A    No, sir.  That will be all.

4            MR. DIVINEY:  Thank you.  I don't have any other

5    questions.

6            MR. BASSFORD:  No questions, Your Honor.

7            THE COURT:  Thank you, Ms. Saunders.  I appreciate

8    that.

9            THE WITNESS:  You're welcome.

10           (Witness excused.)

11           THE COURT:  Mr. Diviney, do you have other witnesses

12   you'd like to call?

13           MR. DIVINEY:  I do not.  Mr. Hale has some things

14   he'd like to say at the appropriate time.

15           THE COURT:  We'll have argument and then we'll hear

16   allocution from Mr. Hale.

17           Mr. Bassford?

18           MR. BASSFORD:  Your Honor, I think my memo lays it

19   out pretty well.  There's just not a lot of reason to come off

20   the guidelines.  And but for the grace of *Davis* and the fact

21   that conspiracy to rob is not the predicate anymore, Mr. Hale

22   would have been an armed career criminal, and that would have

23   been a significant problem for him today.

24           THE COURT:  Well, it would have been 180 months

25   mandatory minimum.

1          MR. BASSFORD:  Yes, Your Honor.

2          THE COURT:  Up to life.

3          MR. BASSFORD:  Yes.  So he does not have a good

4    record.  So all of the things that we think about, protection

5    of the community, or respect for the law, deterrence, all of

6    those come into play here.  So the guidelines are what

7    we're -- are what they are, and the government just doesn't

8    see a reason to come below the guidelines.

9          THE COURT:  All right, Mr. Bassford.  Thank you.

10          Mr. Diviney, let's hear from you, sir.  And I read

11    your memo and I appreciate it.

12          MR. DIVINEY:  Thank you, Your Honor.

13          You know, there's nothing I can say about Mr. Hale's

14    criminal history to make it any different than what it is, and

15    I regret that for Mr. Hale, and he himself regrets that --

16    that you can take up three or four pages there describing some

17    of the really bad things and dumb things that he's done in his

18    life.  And it is what it is.

19          And that said, you know, we are not just the sum of

20    our worst mistakes, and Mr. Hale is not just the person that

21    he's been on those days that ended in terms of incarceration.

22    And, you know, he's learned something in the last 20 months.

23    I think he'd like to tell the Court a little bit about that,

24    and he wants to be a different person.  And, Judge, I

25    personally think 48 months is enough time to sit and think

1    about how are you going to do something different in the

2    future, and, certainly, for someone like Mr. Hale how he can

3    never touch a firearm of any kind again ever in his life.  And

4    so we're asking for a 48-month sentence, Your Honor.

5              THE COURT:  All right, Mr. Diviney.  Thank you for

6    that.

7              Mr. Hale, we've heard from Ms. Saunders and I've

8    read the letters that she and -- that she provided, along with

9    a letter from Ms. Thomas.  I've read your letter, heard from

10   Mr. Bassford, I've heard from the -- your lawyer.

11             What would you like to tell me by way of allocution

12   that might be helpful to me in fashioning an appropriate

13   sentence in this case?

14             THE DEFENDANT:  Your Honor, I -- I've been in

15   Roanoke City Jail for about a year and a half, almost two.

16   It's been the hardest time for me with my daughter being born

17   here, you know, with my age and having what, you know, other

18   elements that, you know, exist today.  I know my criminal

19   history isn't like great.  I know I made some dumb decisions

20   in life, including, you know, my decision to carry a firearm

21   in this case.

22             But none of that describes who I am today.  I --

23   I've grown past it.  I'm -- I want to be so much more than

24   what's on paper.  I am more than what's on paper.  I just --

25   I'm asking that, you know, you guys have mercy on my

1    situation.  I'm not -- I don't have any excuse.  All I -- all

2    I can say is that I'm better than this, and I will be better

3    than this, and I will do better.  In the end I just ask that

4    you guys have mercy on me.  That's all, Your Honor.

5          THE COURT:  All right, Mr. Saunders, thank you for

6    that -- I'm sorry, Mr. Hale, thank you for that.

7          The Court starts each sentencing with a

8    consideration of the advisory sentencing guidelines.  They

9    are -- they are a place to begin and a benchmark before

10    considering the 3553(a) factors.  The guidelines in this case

11    at a low end is 77 months and a high end of 96 months, and

12    those are entirely reflective of the defendant's criminal

13    history in this case.

14          The government argues that the -- that Mr. Hale

15    chose to arm himself and get into a vehicle with a drug

16    dealer, and that's when he was caught with Mr. Kelly with this

17    firearm.  The government focuses much of its argument on the

18    criminal history that we have spoken about and notes that this

19    criminal history isn't built up just by a number of driving

20    suspendeds or minor larceny charges.  These are serious

21    offenses involving violence and drugs and a criminal history

22    category of VI.

23          The government notes the defendant does have and has

24    had a difficult upbringing resulting in significant substance

25    abuse and some mental health issues, and the government asks

1    all things considered for the low end of the guidelines, 77

2    months.

3            It's not often that the government asks for the low

4    end of the guidelines, and I -- I take that into

5    consideration, and I appreciate that.

6            The defendant, in his sentencing memo and here today

7    in argument, requested downward variance to 48 months.  The

8    defendant notes that the guidelines are correctly calculated

9    at 77 to 96 months and argues that this is a victimless crime.

10           Well, having guns in the hands of persons who are

11   convicted, and in this case having a gun in the presence of

12   someone who is dealing drugs, although there's no suggestion

13   that Mr. Hale was involved in Kelly's drug dealing, I can't

14   agree that this is a, quote, unquote, victimless crime.

15   Having a gun near a drug dealing activity is a dangerous

16   proposition, and people get shot every day.  So I don't agree

17   that this is a victimless crime.  There's a reason why the

18   statute provides for folks who are felons not to possess

19   firearms, and here we have someone who has did just that.

20           I do note the -- as the defendant notes in his

21   sentencing memo the struggles that the defendant has had with

22   addiction and the mental health issue that surfaced when

23   Mr. Hale was incarcerated in Pennsylvania, anxiety and

24   depression, and the medication he received there and is

25   continuing to take today at the Roanoke City Jail.

1      I have to quote from Mr. Diviney's well-articulated

2  sentencing memo about Mr. Hale's history.  Mr. Diviney writes:

3  A uniquely tragic childhood devoid of any semblance of

4  emotional or material stability, without parental support or

5  supervision and fraught with exposure to incapacitating

6  substance abuse and violence.

7      All of that's true.  It's just true.  Mr. Hale grew

8  up in a situation where both of his parents were addicts,

9  ended up dying at age 28 from AIDS.  He went to live with his

10 uncle in Pennsylvania, and that wasn't a good situation.

11 Although I have to tell you, in Mr. Hale's letter, he

12 doesn't -- even though he was subjected to some violence

13 there, I thought he was -- I thought he very gently dealt with

14 his uncle's situation.  He went to live in a foster home.  For

15 a period of time he lived with his uncle's ex-wife, and I

16 think that was probably the best influence he had, at least

17 according to his letter, growing up.

18      But he took off after that and has really been

19 engaged in -- he's had some jobs.  He's been a forklift

20 operator at a couple of different places.  But those haven't

21 seemed to stick and he has been involved in crime and spent a

22 bunch of his time already in his life in jail in state court.

23 I note that he has spent 19 months in custody in this case.

24      And I do want to say that I get a lot of letters

25 from folks who are asking for leniency prior to sentencing.

1   And I thought Mr. Hale's letter was one of the most thoughtful

2   and reflective ones that I have received.  There was one part

3   in particular where he said, "In evolving and changing for the

4   better, I've learned to practice self reflection and self

5   accountability.  There is really no making up for time lost,

6   but there is still time to live better."

7          That sort of self-reflection and

8   self-accountability, that self-awareness, to some extent,

9   comes with maturity.  No more blaming others.  No more blaming

10  your past.  Be accountable for your own conduct.  And I

11  appreciate that.  I thought it was a thoughtful letter.

12         So what to do.  You know, I agree with Mr. Bassford

13  in large measure that the goals of punishment, protection,

14  deterrence, respect for the law, require a significant

15  sentence, because today the only thing that has deterred

16  Mr. Hale from being involved in criminal activity has been

17  being incarcerated.  Protecting the public has required him to

18  be incarcerated.  So I get that.  And the goals of punishment

19  in this case call for a significant period of incarceration.

20         But there is that other goal of rehabilitation, and

21  that other goal of recognizing what Mr. Hale put in his letter

22  about his growing maturity, self-accountability,

23  self-reflection, recognizing that there are things in life

24  that he wants to accomplish, and he can't do any of that

25  behind bars.

1          So I'm going to grant the defendant's motion for a

2     variance.  I'm going to vary down below the guidelines in this

3     case.  And I do that for a number of reasons.  One, Mr. Hale

4     had a very difficult childhood.  Extremely difficult

5     childhood.  He speaks in his letter of being really at a very

6     young age having to be the man of the house.  Hiding money

7     from drug addicts to pay the bills.  Unfortunately, he is a

8     product of what -- how he grew up.  And he has lived a life

9     that is -- that while there's been some employment and that he

10    took some community college courses in management in

11    Pennsylvania, he has lived a life of crime and drug dealing.

12    And at this point he was in a drug dealer's car with a gun in

13    November 2018.  He does suffer from anxiety and depression,

14    and he's got serious substance abuse issues.  The presentence

15    report notes that he asks for mental health treatment and

16    counseling, and I certainly will recommend that to the Bureau

17    of Prisons.

18          I think taking into account the balance under the

19    3553(a) factors of the defendant's history and

20    characteristics, his difficult upbringing, his significant

21    criminal history, I think a sentence of 65 months is

22    sufficient, but not greater than necessary, in this case, and

23    that's the sentence I'm going to impose in this case.  It is

24    12 months below the guidelines, and I varied downwards because

25    of his personal characteristics, and I believe his -- the

1    maturity he has shown since he has been incarcerated to note

2    self-reflection, self-accountability and move forward and

3    hopefully not return to a life of crime.

4          I'm going to put him on supervised release for a

5    period of three years.  Upon supervised release, he must

6    comply with the following mandatory conditions of

7    supervision:

8          He must not commit another federal, state, or local

9    crime.  That's any kind of crime.  You'll be on supervision,

10    you'll be accountable to this Court, and, if you commit

11    another crime, I will put you in jail.

12          You cannot unlawfully possess, buy, sell, or use a

13    controlled substance.  And that includes any controlled

14    substance, including marijuana.  You use those, you possess

15    those, you have those, I will put you in jail.

16          You cannot have anything to do with a firearm.  You

17    can't even touch -- you can't even go into a gun store and

18    touch a gun.  You cannot possess a firearm, ammunition,

19    dangerous device, destructive weapon.  And if you do that, I

20    will put you in jail.

21          I'm going to require drug testing to ensure

22    compliance with the prohibition against use of controlled

23    substances.

24          I'm going to require cooperation in the collection

25    of DNA as directed by the probation officer.

1      I'm going to require that the defendant comply with

2   the mandatory and standard conditions of supervision in

3   this -- that this Court has adopted:

4      The defendant will be subject to warrantless search

5   and seizure to ensure compliance of these conditions upon a

6   finding by the probation officer of reasonable suspicion that

7   the defendant has violated a condition of his supervision.

8      Following the defendant's release from imprisonment,

9   the Court will evaluate his status and determine whether,

10  after incarceration, additional mental health treatment and

11  counseling and drug treatment and counseling are necessary and

12  appropriate.  And so I'm going to order when he gets out a

13  mental health evaluation and a substance abuse evaluation.  If

14  that evaluation calls for additional rehabilitation and

15  treatment, the defendant shall participate in the program as

16  designated by the Court upon consultation with the probation

17  officer until such time as the defendant has satisfied all the

18  requirements of the program.

19     Again, he cannot possess a firearm, and he cannot

20  live in a residence where there are any firearms, ammunition,

21  destructive devices, and dangerous weapons.

22     Mandatory special assessment of a hundred dollars.

23     I'm going to impose a fine of $100 to allow the

24  defendant to participate in the Bureau of Prisons' financial

25  accountability program.  The fine is below the guideline range

1   because of an inability to pay.

2           I'm going to require him to pay a lump sum payment

3   of a hundred dollars immediately, and during the term of

4   imprisonment payment in equal monthly installments of $25 or

5   25 percent of the defendant's income, whichever is less, to

6   commence 60 days after the date of his judgment.

7           And if there's any left over after he gets out,

8   equal monthly installments of $25 to commence 60 days after

9   his release.

10          I hereby advise the defendant that he has a right to

11  appeal this sentence.  Notice of appeal must be filed within

12  14 days of the entry of judgment, or within 14 days of a

13  notice of appeal by the government.  If requested, the clerk

14  will prepare and file a notice of appeal on behalf of the

15  defendant.

16          I also advise the defendant of a right of a person

17  who is unable to pay the cost of an appeal to apply for leave

18  for appeal without prepayment of such costs.

19          Anything else from -- probation, have I missed

20  anything regarding the terms and conditions of supervision?

21              PROBATION:  No, Your Honor.

22              THE COURT:  Mr. Bassford, anything else from you?

23              MR. BASSFORD:  No, Your Honor.

24              THE COURT:  Mr. Diviney?

25              MR. DIVINEY:  Only one thing, Your Honor -- and I

1   keep forgetting not to stand up.

2            THE COURT:  That's okay.

3            MR. DIVINEY:  He would like a recommendation that he

4   be sent to Manchester, Kentucky.

5            THE COURT:  Is there a reason for that?

6            MR. DIVINEY:  Do you have a specific reason?

7            No, sir.

8            THE COURT:  I'll recommend that.  He's obviously

9   looked into it and seems like that might -- if it's consistent

10  with his security classification.  You know, the Bureau of

11  Prisons can do what they want in terms of where they house

12  someone, but I'll certainly put in the judgment that the

13  defendant requests to be -- have his sentence served in

14  Manchester, Kentucky.

15           If there's nothing further, ask the marshal to

16  declare a recess.

17           THE MARSHAL:  All rise.

18           (The proceedings concluded at 11:39 a.m.)

19                         **CERTIFICATE**

20           I, Mary J. Butenschoen, certify that the foregoing

21  is a correct transcript from the record of proceedings in the

22  above-entitled matter.

23  /s/ Mary J. Butenschoen, RPR, CRR               9/18/2020

24

25